290 So.2d 603 (1974)
Sandra MOORE
v.
STATE of Mississippi.
No. 47740.
Supreme Court of Mississippi.
February 25, 1974.
*604 Jimmy D. Shelton, Tupelo, for appellant.
A.F. Summer, Atty. Gen., by T.E. Childs, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
SUGG, Justice:
The defendant was jointly indicted with Spencer Harlow under Miss. Code Ann. § 97-1-1 (1972) for conspiring to take into her possession a quantity of amphetamine, a schedule III drug, under the Uniform Controlled Substances Act. She was tried separately in the Circuit Court of Lee County, convicted and sentenced to serve a term of 3 years in the Mississippi State Penitentiary.
The question for decision is, may an accused be convicted of conspiracy when the conspiracy is between two persons, one of whom is the accused and the other an informer for the state who participated in the conspiracy for the purpose of informing on the accused?
Cases in this jurisdiction have not dealt with the precise question raised on this appeal, but we have held that a conspiracy is a complete offense. We have also held that neither at common law nor under the statute (§ 97-1-1) is an overt act pursuant to the conspiracy necessary for the completion of the crime. Martin v. State, 197 Miss. 96, 19 So.2d 488 (1944); King v. State, 123 Miss. 532, 86 So. 339 (1920); Isaacs v. State, 48 Miss. 234 (1873); Laura v. State, 26 Miss. 174 (1853).
In King, supra, although the defendants were only indicted for conspiring to make an assault upon and smear tar upon one woman the testimony showed a conspiracy to commit an unlawful act upon at least two women. The commission of the assaults was held admissible as to tending to show the conspiracy, and the Court held that the permissible range of evidence in a conspiracy case is perhaps wider than in any other case. The Court stated: "What they actually did in this case is evidence of what they intended to do."
In Martin, supra, the Court affirmed the holding of King and stated that a conspiracy to commit a crime is a complete offense, separate and distinct from the commission of the crime contemplated by the conspiracy and does not become merged in the actual commission of the crime which was the subject of the conspiracy.
Since a conspiracy to commit a crime is different from the crime that is the object of the conspiracy, the first necessarily involves joint action while the other does not. By its very nature conspiracy is a joint or group offense requiring a concert of free will. The union of the minds of at least two persons is a prerequisite to the commission of the offense, or, stated differently, at least two persons must agree for a conspiracy to exist.
Defendant contends that she is not guilty of the crime of conspiracy because conspiracy cannot occur when one of the two parties involved is either a government agent or an informer.
*605 In 15A C.J.S. Conspiracy § 37 (1967) the general rule is stated as follows:
Where one of two persons who has allegedly conspired to do an illegal act is an officer who acted in the discharge of his duties, or a government informer who secretly intended to frustrate the conspiracy, the other person cannot be convicted of conspiracy... .
This general rule is supported by decisions from federal courts and in United States v. Chase, 372 F.2d 453 (4th Cir.1967) the Court stated:
[I]t cannot be said that this conspiracy continued after April 5, 1965 between Carr and Chase, because it is equally well-established that one who acts as a government agent and enters into a purported conspiracy in the secret role of an informer cannot be a co-conspirator. Sears v. United States, 343 F.2d 139 (5 Cir.1965); Developments in the Law  Criminal Conspiracy, 72 Harvard Law Review 920, 926 (1959); Note, 13 U. of Miami Law Review 380 (1959); Note, 33 Tulane Law Review 393 (1959). See also, O'Brien v. United States, 51 F.2d 674 (7 Cir.1931); United States v. Wray, 8 F.2d 429 (D.C.Ga. 1925).
(372 F.2d at 459).
Carr was arrested on April 5, 1965, confessed to his participation in a conspiracy, and incriminated Chase. At the request of federal officers he agreed to become a government agent and thereafter communicated with Chase and arranged to resume taking bets for the pool conducted by Chase. The Court held that no conspiracy continued between Carr and Chase after Carr became a government agent because he was acting in the secret role of an informer and therefore could not be a co-conspirator.
In the 5th Circuit case of Sears v. United States, 343 F.2d 139 (5th Cir.1965), Davis, a former bootlegger, worked with government investigators as an undercover agent and informer. Sears was Sheriff of Coffee County, Georgia. The Court held that the jury could not convict Sears merely upon finding that he had accepted money from Davis and furnished protection to him because this would establish only that Sears had combined with Davis, and since it takes two to conspire, there can be no indictable conspiracy when one of the parties to the conspiracy is a government informer who secretly intends to frustrate the conspiracy.
In United States v. Wray, 8 F.2d 429 (D.C., N.D.Ga. 1925), the District Court held:
If a purchaser and seller of liquor, both knowing the sale to be illegal, can be considered conspirators, still where the purchaser is an officer in the discharge of his duty, there is no indictable conspiracy. But here the indictment charges, also, that the two defendants conspired with one another, and there is evidence in support of this view of the case. The issue as to their conspiracy should be passed upon by the jury. (Emphasis supplied). (8 F.2d at 430).
We therefore hold that where one of two persons who conspire to do an illegal act is an officer who acted in the discharge of his duties, or is an informer for the state who entered into the conspiracy for the purpose of informing on the other party, such other person cannot be convicted of conspiracy. After the elimination of an officer acting in the discharge of his duty, or an informer who conspires solely for the purpose of informing, there must remain at least two persons to a conspiracy.
The state contends that co-indictee Harlow did not become an informer until after the conspiracy was complete so that the conspiracy as it then existed was not altered by the fact that Harlow later became an informer, and relies on United States v. Sacco, 436 F.2d 780 (2nd Cir.1971), where the Court stated:
Defendant urges several grounds for reversal. The first of these is that the *606 trial judge erred in charging the jury that they could find Sacco guilty of conspiring with Paul Parness. The basis for this contention is the admitted fact that Parness was, at some point in time a police informer. It was not until May 10, however, that Parness assumed this status. The fact at a point in the conspiracy one of the conspirators becomes an informer does not alter the character of the conspiracy as it existed up to that point. See United States v. Corallo, 413 F.2d 1306, 1321 (2d Cir.), cert. denied, 396 U.S. 958, 963, 90 S.Ct. 431, 24 L.Ed.2d 422 (1969).
(436 F.2d at 783).
In the case at bar Harlow testified that he visited the restaurant at the truck stop where the defendant was employed about 11:00 p.m., at which time she agreed to purchase 500 amphetamines from him to be delivered later that night. Harlow did not have any amphetamines to deliver to defendant so he reported the conspiracy to Eddie Walker, a member of the Mississippi Highway Patrol, who, in turn, called the sheriff of the county who acquired 500 amphetamines from a pharmacist and delivered them to Harlow for the purpose of making a sale and delivery to the defendant.
The sheriff and the deputy followed Harlow to the restaurant and remained outside the restaurant. They observed the transaction between Harlow and the defendant through a window, and as soon as the defendant took the sack containing the amphetamines into her possession the sheriff walked into the restaurant and arrested the defendant. Walker, the highway patrolman, followed the sheriff and deputy and parked at a service station approximately 50 yards from the restaurant while the events just described took place.
Harlow testified that Highway Patrolman Walker, about two months before the evening in question, requested that he help the officer on narcotics cases and he agreed to do so. On cross-examination, when Harlow was asked if he had helped catch anyone else, he responded that he had. He was then asked, "And would you tell the court who else you have been in on these setups with?" An objection to the question was sustained so that the identity of other persons that Harlow might have worked with or tried to catch was not pursued further.
Robert Herring, Sheriff of Lee County, was questioned with reference to his intention to arrest and prosecute Harlow and gave the following responses:
Q But you saw fit to let Harlow sign his own bond and walk out of jail that night, didn't you?
A Yes, sir, but I was  I didn't have to arrest him. I didn't have to carry him in. But you got to remember that I walked in the Nettleton Police Department and never seen this man before in my life, and I was not going to take the chance on  after this thing had gone as far as it had gone, without knowing that I could get my hands on this man in case he decided to skip out, because I didn't know him, you see, that was my purpose for  for placing him under bond, the main purpose.
Q Was it your intention to prosecute Spencer Harlow on this particular night?
A No, sir. But I wasn't going to let him leave me holding the bag if he decided not to come back, if he decided to skip out.
On cross-examination the sheriff testified further about the prosecution of Harlow as follows:
Q To your knowledge has  was Spencer Harlow ever brought to trial on his charge?
A No, sir, he wasn't.
Q He never was intended to be brought to trial, was he?

*607 A As far as I was concerned, if everything went down according to line, he wouldn't.
It is thus apparent that Harlow entered into the conspiracy with the defendant for the sole purpose of aiding law enforcement officers by informing on the defendant; therefore, after the elimination of the informer, Harlow, the requisite two persons to the conspiracy did not remain.
Reversed and defendant discharged.
RODGERS, P.J., and PATTERSON, INZER and WALKER, JJ., concur.