464 So.2d 63 (1985)
Howard McCoy BYRD
v.
F-S PRESTRESS, INC. and Steve Smith, Jr.
No. 54581.
Supreme Court of Mississippi.
February 13, 1985.
*64 John M. Deakle, Hattiesburg, John Satcher, Heidelberg, for appellant.
Lawrence C. Gunn, Jr., Aultman, Tyner, Weathers & Gunn, Hattiesburg, for appellees.
Before WALKER, P.J., and HAWKINS and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This appeal follows a jury verdict in favor of F-S Prestress, Inc. and its employee, Steve Smith, Jr., finding no liability to Howard McCoy Byrd for injuries and damages resulting from a February 29, 1980 collision between Byrd's tractor trailer and a Prestress tractor trailer driven by Smith.
On appeal, Byrd contends that the trial court erred in: (1) in granting Jury Instruction D-6 (concerning distances to be observed by motor trucks following one another); (2) in granting Jury Instruction D-5 (concerning the permissibility of proceeding at a reduced speed); (3) in refusing to grant Jury Instruction P-18 (concerning Byrd's theory as to how turns onto a through highway are to be executed); (4) in striking part of the testimony of Byrd's accidentologist; and (5) in granting Jury Instruction D-10 (stating that disfigurement is not a compensable injury).
For the reasons set forth below, we affirm.

II.

A.
The accident which has given rise to this litigation occurred at approximately 7:00 a.m. on February 29, 1980 in the southbound lanes of U.S. 49 approximately three miles north of Hattiesburg, Mississippi. The parties stipulated that the point of impact was 375 feet south of where Pep's Point Road intersects that highway.
Smith, driving a Prestress tractor trailer, emerged from Pep's Point Road on the east side of U.S. 49 and turned south onto U.S. 49. Executing this turn involved: (1) stopping where Pep's Point Road first intersects U.S. 49; (2) crossing the northbound two lanes of U.S. 49 so as to reach the center median area of U.S. 49; (3) pausing in the center median area; and (4) turning left into the leftmost (easternmost) of the two southbound lanes of U.S. 49.
The parties have agreed that 24 seconds after Smith had executed this turn and had proceeded 375 feet down U.S. 49, the front driver's side of Byrd's tractor struck the passenger-side rear end of Smith's trailer. Byrd's tractor trailer then jackknifed and came around in front of Smith's truck eventually *65 coming to a stop against a bridge abutment that is some 300 feet past the point of the collision.
Byrd suffered facial lacerations and other head injuries. Byrd's truck was substantially damaged. Smith suffered no injury, and his trailer was only slightly damaged.
Approximately eight tenths of a mile north of the accident site on U.S. 49 is the crest of a hill. From this hill crest down to the accident site the highway is straight and clear. Once reaching the hill crest Byrd could see Smith and be seen by Smith. Byrd came over the crest of the hill in the righthand lane following a group of other cars and trucks.
Shortly after reaching the crest of the hill, Byrd pulled into the lefthand lane and began passing some of the cars and trucks. He remained in the lefthand lane until the accident and was unable to reenter the righthand lane because there were other vehicles in that lane occupying it. At the time of the accident Smith's truck was traveling at reduced speed  perhaps in the neighborhood of 20 to 30 mph  because that is as much acceleration as Smith had been able to obtain after having paused in the center median.

B.
Howard McCoy Byrd commenced this civil action on May 13, 1980, when he filed his declaration in the Circuit Court of Forrest County, Mississippi. Named as Defendants were F-S Prestress, Inc., a corporation, and Steve Smith, Jr., individually. The declaration charged Smith with negligence in various particulars. Prestress was sued as the employer of Smith under a theory of respondeat superior. Indeed, it was uncontroverted at trial that Smith was employed by Prestress and was acting within the course and scope of his employment when the accident occurred.
After the usual course of pretrial proceedings, this case was called for trial on its merits on May 5, 1982. Trial resulted in a jury verdict for both defendants.
It is fairly apparent from reviewing the record in this case that the reason the jury did not find Smith and Prestress liable is because the conclusion is nearly inescapable that, at the time and on the occasion in question, Byrd was not properly attentive and was probably speeding. From a combination of direct observation testimony and mathematical time and distance calculations, it appears that Byrd was at least 1,000 feet (perhaps nearly 2,000 feet) north of Smith when Smith pulled out onto Highway 49. Byrd, claimed to be going 55 miles per hour while he was passing other cars and trucks whose drivers testified that they were going 55 miles per hour. By stipulation, Byrd had 24 seconds after Smith turned onto the highway to slow down so as to avoid a collision. The verdict suggests a finding by the jury that, if Byrd had been driving reasonably carefully, the accident should have been avoided.
In any event, on May 14, 1982, final judgment was entered in favor of Prestress and Smith and against Byrd. Plaintiff Byrd timely filed a motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial. These alternative motions were overruled by order entered by the circuit court on November 10, 1982.
Plaintiff Byrd has now perfected his appeal to this Court where the matter is ripe for review.

III.

A. Preliminary Observations

The jury in this case was essentially asked to determine: whether Smith was at fault for the accident because he turned onto the southbound lanes of U.S. 49 when oncoming traffic was too near, or whether Byrd was responsible for the accident because, although having had adequate notice of Smith's presence on the road, he failed to use reasonable caution and slow down so as to avoid the collision.
The core issue of fact at trial may be simply put: when Smith began his entry onto the southbound lanes of U.S. 49, was *66 Byrd under the totality of the circumstances so close as to constitute an immediate hazard of collision. If so, Byrd had the right-of-way and Smith was negligent. If not, Smith was entitled to proceed as he did and Byrd was negligent. This core issue was fairly framed for the jury via Instructions P-9 and D-3. No complaint is made here of either of those instructions.
The jury found in Smith's favor  there was an adequate distance between Byrd and Smith when Smith turned onto Highway 49. Given that 24 seconds elapsed between the moment when Smith turned onto Highway 49 and the moment of impact (hence Smith and Byrd were at least approximately one-fifth of a mile apart when Smith turned), the jury's verdict is most reasonable, and it is fair to regard that this verdict is based more upon a jury's commonsense understanding of highway behavior then it is upon any technical details or legal niceties of the instructions which the jury received. In any event, this reading of the verdict is unassailed here and is, we suggest, legally unassailable. Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 656-57 (Miss. 1975).
Faced with this reasonable and commonsense verdict, Byrd is forced on this appeal to resort to complaining of alleged errors in jury instruction concerning relatively insignificant side issues. When he does this he runs headlong in the several well established and wholly reasonable principles applicable in cases where errors in jury instructions are asserted.
In this context, we do not isolate the individual instruction attacked, but rather we read all instructions as a whole when determining whether a jury has been correctly instructed. Jackson v. Griffin, 390 So.2d 287, 290 (Miss. 1980). Defects in specific instructions do not require reversal where all instructions taken as a whole fairly announce the applicable primary rules of law. Allen v. Blanks, 384 So.2d 63, 65 (Miss. 1980). Where, as here, it may fairly be charged that one or more instructions may have been confusingly worded, this Court should not reverse if other instructions clear up the confusing points. Young v. Cameron, 203 So.2d 315, 316-317 (Miss. 1967). These restrictions on our scope of review well in mind, we turn to Byrd's specific assignments of error.

B. Making A Left Turn In Mississippi

Byrd complains that refusal of Instruction No. P-18 was error. P-18 would have advised the jury that, because Smith turned into the lefthand-easternmost lane of the southbound two lanes of Highway 49, he violated Miss. Code Ann. § 63-3-703(b) (1972) and is thus negligent as a matter of law.[1] The statute actually reads:
(b) The approach for a left turn shall be made in that proportion of the right half of the roadway nearest the center line thereof and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered.
Byrd contends this statute means that a lefthand turn made across a four lane highway is to be executed so that the party making the turn drives directly to the righthand-westernmost lane as quickly as possible. This would have Smith required to cross a lane of possibly oncoming traffic. Visualizing Byrd's theory reveals its impracticability.
Our highway safety statutes were enacted in an era when there were few, if any, four lane highways. See Stong v. Freeman Truck Line, 456 So.2d 698, 704-06 (Miss. 1984). We will interpret this statute drafted in an era of two lane highways to accommodate the practical realities of modern four lane highways such as U.S. 49.
The "center line of the roadway being entered" refers in a two lane highway to the dividing line and in a four lane highway to the median area. Byrd's interpretation of the statute is in total contradiction to the proper turning procedure described in the *67 Driver's Handbook put out by the National Traffic Safety Foundation:
Drivers making left turns must start and complete the turn in the lane farthest left available to vehicles traveling in their direction.
 Driver's Handbook at 8 (1979)
There is no error in the trial judge's refusal of Instruction No. P-18.

C. Trucks Should Keep 300 Feet Between Them

Byrd claims that the granting of Instruction No. D-6[2]  which stated restrictions on how close a "motor truck" could follow behind another as articulated in Miss. Code Ann. § 63-3-619 (1972)  was error because the instruction was an "abstract" statement of the law which was not applicable to the facts as developed in this case. Byrd also contends that D-6 (which Byrd calls an "open road" instruction) conflicts with D-5 (which he characterizes as an "intersection" instruction). This argument that D-6 conflicts with D-5  beyond being a grasping-at-straws objection  was not made at the trial court and thus should not be considered on this appeal. Rule 42, Miss.Sup.Ct.R. Similarly, the "abstractness" of Instruction D-6 was never raised at trial and should not be considered. In any event, the instruction is not improperly abstract.
Byrd's argument that following distances are inapplicable to this case  since it involves a turn at an intersection  is simply an attempt to prevent the jury from considering whether sufficient distance existed between Smith and Byrd, when Smith executed his turn, so that Byrd was bound to respect the statutory following distances. One should recall that the real issue in the case is, whether Smith turned when Byrd was too close, or whether Byrd continued at high speed when a reasonable driver would have decelerated knowing that Smith was ahead of him.
Byrd essentially wishes that the law were such that a driver who is already on a through highway is never required to reduce speed as it approaches a vehicle which has turned onto the highway. Byrd seems to be saying that if the approaching vehicle has to slow down to avoid collision, that vehicle is so close that the turning vehicle is negligent as a matter of law if it fails to await the passage of the approaching vehicle before turning. This clearly is not the law, but it is this interpretation of the law upon which Byrd must rely to save his case. The assignment of error is rejected.

D. Traveling At Reduced Speed

Byrd contends that it was error for the trial court to grant Instruction No. D-5[3] which allowed the jury to find that it was not negligence on the part of Smith to be traveling at less than 30 miles an hour on Highway 49 if such reduced speed was out of necessity as provided in Miss. Code Ann. § 63-3-509(1) (1972):
No motor vehicle shall be driven at a speed less than thirty miles per hour on federal designated highways where no hazard exists. An exception to this requirement shall be recognized when reduced speed is necessary for safe operation, or when a vehicle or combination of vehicles is necessarily, or in compliance with law or police direction, proceeding at a reduced speed.
*68 Byrd essentially contends that the physical limitation on the rate of acceleration of a tractor trailer does not fall under the "necessary" exception to the minimum speed. Byrd is contending that either by the time a vehicle would enter the highway, or at least by the time such a vehicle would be overtaken by other traffic, such an entering vehicle must have attained the minimum speed of 30 miles per hour. If this were the law, it is obvious that large trucks would be unable to enter these federal highways at many  if not most  stop sign intersections. The reason for this is that it takes somewhere in the neighborhood of half a minute for even a moderately loaded tractor trailer on a straightaway to reach a speed of 30 miles per hour. With oncoming traffic traveling at approximately 55 miles per hour, this would require the driver of the entering truck to be able to see clearly approximately one-half mile back down the road he was entering. It would appear to be within everyone's common knowledge that there are numerous intersections where such visibility does not exist.
Byrd contends that Instruction No. D-5 conflicts with Instruction No. P-19 which attempts to define "necessity" as "proceeding by legally posted speed limit signs, proceeding by escort authorized by law, or by police escort". These two instructions would only be in conflict if it is assumed that P-19  which somewhat defines "necessity"  is meant as an exclusive definition rather than as a partial one. In contradistinction, D-5 essentially echoes the statute ("when reduced speed is necessary for safe operation") and leaves the determination of what is "necessary" to a jury determination of reasonableness. Once again, there are no cases deciding this issue, but it would appear from a common sense viewpoint that Smith's approach to the construction of this statute is correct. Cf. Stong, 456 So.2d at 710 ("reasonable promptness" is a jury issue).
Even when we give Byrd the benefit of the doubt, we do not read Instruction D-5 as being erroneous, only incomplete at worst. Indeed the primary function of Instruction P-19 is that it cures any problem with D-5. The assignment of error is denied.

E. The Accidentologist

Scarborough  the accidentologist[4]  is a trooper with the Mississippi Highway Patrol. Scarborough is a college graduate and a graduate of the Mississippi Law Enforcement Officer's Training Academy. He attended the Traffic Institute at Northwestern University for seven weeks. This course involved "determining time and distance of vehicular movement, determining speeds, stopping distances, acceleration rates and similar motions." Scarborough initially testified regarding times, velocities and distances but then he began testifying regarding reaction times and similar physiological/psychological concepts.[5]
At this juncture, after appropriate objection, the testimony of Scarborough, other than regarding times and velocities and distances, was excluded. Both Byrd and Smith objected to this ruling. Byrd objected to the limitation on his expert, Smith objected to the jury having heard Byrd's expert on the subject of reactions (even though the testimony was excluded) without his being able to cross-examine him.
After this exclusion of part of Scarborough's prior testimony, Scarborough went on to testify for 31 pages regarding time, velocity and distance. There is no proffer in the record by Byrd as to what else Scarborough would have testified to and Byrd in his appellate brief speaks only in very general terms about a limitation on his expert. There is no way of knowing what Byrd intended to elicit from Scarborough that the jury did not in fact hear  assuming there was anything at all. See *69 Dazet v. Bass, 254 So.2d 183, 187 (Miss. 1971) (adequate proffer is necessary).
It would appear that Scarborough is hardly an expert in the area of human physical reactions. His only training in this was received with the Mississippi Highway Patrol through reading books and articles and apparently some hands-on experience  though what this experience consisted of was not articulated. The determination of whether a witness possesses the required degree of specialized knowledge to qualify as an expert witness is one that, if the witness' credentials are challenged, must be made before the expert is allowed to give an opinion. This competency determination necessarily rests within the sound discretion of the trial judge. Parmes v. Illinois Central Gulf R.R., 440 So.2d 261, 267 (Miss. 1983); House v. State, 445 So.2d 815, 822 (Miss. 1984). There is no evidence that the trial judge abused his discretion in this matter. The assignment of error is denied.

F.
Byrd argues that the trial judge erred in granting Jury Instruction No. D-10 to the effect that "disfigurement" is not a compensable injury. This instruction relates to damages only. Inasmuch as we affirm the judgment in favor of Prestress and Smith on the liability issue, we regard any questions pertaining to damages issues as moot.

IV.
One further point need be mentioned.
There has been filed in this case a trial record consisting of ten volumes and 1133 pages. As is obvious from the assignments of error, four of the issues tendered  those relating to jury instructions  were pure questions of law. The transcript of the trial is largely irrelevant to those issues.
We note from the certificate at the end of the record that the combined court reporter's and clerk's fees come to some $1,255.50. We assume that at some point in time one or more of the parties is going to be asked by his attorney to pay that sum. We instruct any attorney in the case attempting to pass on these costs to his client to advise that client that this Court is of the view that the record was unnecessarily lengthy and that the greater portion of the reporter's and clerk's fees of $1,255.50 was unnecessarily incurred.
We are aware that many appealing attorneys routinely designate the entire course of trial proceedings for transcription, wholly without regard to the nature of the issues to be raised on appeal. The time has come for this practice to stop. We have repeatedly urged the parties to an appeal and their counsel to reduce the bulk of transcripts
"by excluding or omitting portions of the testimony or exhibits not relevant to the issues raised on appeal." City of Mound Bayou v. Roy Collins Const. Co., 457 So.2d 337, 343 (Miss. 1984).
What we said in Mound Bayou was an "urging" from this Court. What we say here should be taken as a warning.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] Deviations from legislatively enacted highway safety standards will generally constitute negligence per se. Stong v. Freeman Truck Line, Inc., 456 So.2d 698, 707 (Miss. 1984).
[2] Instruction No. D-6 reads:

The Court instructs the jury that under the traffic law of Mississippi no motor truck when travelling upon a highway such as U.S. 49 should follow within 300 feet of another motor truck except when overtaking and passing. If you find that the plaintiff operated his vehicle less than 300 feet behind the vehicle of Steve Smith, and if you believe that he was not overtaking and passing at the time, and that such operation by the plaintiff was the sole and only cause of the accident which occurred, then your verdict must be in favor of the defendants.
[3] Instruction No. D-5 reads:

The Court instructs the jury that under the traffic law of Mississippi, ordinarily a motor vehicle should not be driven less than 30 miles per hour on a highway such as U.S. Highway 49. However, an exception to this requirement exists when a vehicle is necessarily proceeding at a reduced speed. Thus you may not find Steve Smith was negligent for operating his vehicle under 30 miles per hour, if you find that he was doing so out of necessity.
[4] Byrd contends that Scarborough is not an accidentologist but rather an expert "in regard to motion and time and velocity". Reply Brief of Appellant at 8.
[5] Because the question is not presented here, we do not consider whether Scarborough, as an accidentologist, was competent to testify at all. See Hagan Storm Fence Co. v. Edwards, 245 Miss. 487, 494-95, 148 So.2d 693, 694-95 (1963).