481 So.2d 805 (1985)
Billy Newton JAMES and Calvin Kenneth Bramlett
v.
STATE of Mississippi.
No. 55186.
Supreme Court of Mississippi.
December 11, 1985.
William Liston, Liston, Gibson & Lancaster, Winona, Ben M. Caldwell, Caldwell & *806 Easterling, Marks, D. Ronald Musgrove and Ben Barrett Smith, Smith & Musgrove, Batesville, for appellants.
Edwin Lloyd Pittman, Atty. Gen. by Anita Mathews Stamps, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and HAWKINS and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
Today's decision is of a sort that many people have difficulty understanding. The conviction of two men for planning the reprehensible contract murder of the ex-wife of one must be reversed because the trial judge erroneously instructed the jury.
Reflection brings to mind that our conduct is subject to the rule of law, not the caprice of men. There is no offense without a law. The legislature of this state has made unlawful criminal conspiracy and defined the contours of that crime. When these Defendants were tried under that law, however, the instructions given the jury were so worded that the jurors may well have convicted upon factual determinations insufficient in law to constitute this statutorily defined offense.
That there must be in any society subscribing to the rule of law congruence between official actions and declared rule seems axiomatic. If we allow to stand convictions infected by the substantially erroneous declaration to the jury of the controlling rule of law, we denigrate the essence of the principal of legality. We reverse today and hope that by our so doing the principal of legality, to whose star our wagon has for these two centuries been hitched, will be enhanced beyond the cost of this temporary thwarting of the apparent demands of justice.

II.

A.
On October 13, 1981, Fay James appeared before the Chancery Court in Clarksdale, Mississippi, and was granted a divorce from her husband, Billy Newton James, on terms quite favorable to her. The final decree provided that Fay James was to receive $2,500.00 a month plus a lump sum settlement of $100,000.00 to be paid in installments of $10,000.00 each year, the first installment being due on January 1, 1982. Mrs. James also received the house and property. These terms were subsequently modified to lower the monthly amount to $1,000.00.
Rather than return to chancery court for further relief, Billy James, one of the Defendants below and one of the Appellants here, decided to have his wife killed and proceeded to hire the job done. On a Saturday afternoon in December of 1981, James met with Calvin Kenneth Bramlett, the other Defendant-Appellant, and William Michael Griffin at Bramlett's home in Tippo, Mississippi. Also present was Willie Miller, James' neighbor and girlfriend.
The plan made at this meeting was that Griffin was to kill Fay James before the first of the year (when the first payment was due). Griffin was to go into her home while she was going out to get the paper on Sunday morning and then kill her when she came back into the house. Griffin was to get $2,500.00 to do the job, $1,500.00 then and $1,000.00 after the job was done. Griffin in fact received payment of $1,500.00 on that day at that meeting. Bramlett was paid $1,000.00 at that same meeting for having arranged to have the job done. Both payments were made in cash.
As fate would have it, Griffin proceeded to contact Detective Nichols of the City of Memphis Police Department and advise him of the planned murder. Detective Nichols provided Griffin with a recorder with which to record any further conversations in or out on his home phone. He arranged for Griffin to be wired with a recording device for a meeting scheduled with Billy James on January 1 of 1982. Griffin had a conversation with James on the night he received the recorder but forgot to record it. Griffin did tape a conversation *807 that took place on the evening of December 31, 1981, and then a second call later that same evening. The content of these conversations confirmed the object of the common plan.
Griffin met with James on January 1, 1982, at a country store at Enid Dam for the purpose of renegotiating the contract. According to Griffin, the original agreement was done away with because James was upset with Bramlett and had determined that Bramlett was not necessary for the killing. Under the new terms Griffin was to get $10,000.00; $2,000.00 on the 6th of January, and the balance in thirty days. James gave Griffin $500.00 that morning, which when added to the $1500.00 he had been given on the Saturday meeting in December, brought the balance paid to him to $2,000.00. Griffin used his $2,000.00 in part to buy a car that he was supposed to use in killing Mrs. James. He was also supposed to buy a gun but didn't. He spent the rest. The meeting at Enid Dam was both recorded and videotaped with Griffin's permission and assistance. Griffin immediately turned the money over to Detective Nichols after the meeting at Enid Dam.
Griffin had worked as a part-time informer for the Memphis Police Department off and on for a "couple of months" and was usually paid between $25.00 and $30.00 a week. He testified that he never intended to do the killing but was only "bull shitting". He was a paid police informer at the time he agreed to kill Fay James and had been paid about $75.00 by Detective Nichols by that time.
Jay Clark, a criminal investigator with the Mississippi Highway Patrol, arrested James as he was leaving the scene of the January 1, 1982 meeting at Enid Dam. He had waited at the top of the dam for radio transmission from the Memphis Police Department investigators that payment had been made. He then proceeded to stop James and advise him that he was under arrest for conspiracy to commit murder.
Bramlett's part in the alleged conspiracy was established via the confidential informant, Griffin. Griffin testified that he had known Bramlett for fourteen to fifteen years; that they were hunting and fishing buddies; and that he generally saw him once or twice a week. In December of 1981, he was over at Bramlett's house drinking beer and Bramlett told him that he "needed someone hit". Griffin agreed to do it and on Saturday went with Bramlett to James' house. At that meeting the arrangements were made, with Griffin being paid $1,500 and Bramlett being paid $1,000.
Griffin subsequently talked to James on the 31st at which time they both agreed that Bramlett was out of the deal. He testified that as of that conversation, which took place around 2:30 on December 31st, Bramlett was not a part of the conspiracy. In the period between the Saturday meeting and the 31st, however, Griffin spoke with Bramlett by phone six to eight times in reference to the killing of Fay James, and during the course of those conversations Bramlett said, "If you don't do it, I'll wind up doing it myself."

B.
Procedurally, this criminal action was commenced on December 10, 1982. On that date an indictment was returned by the Tallahatchie County Grand Jury charging Billy Newton James and Calvin Kenneth Bramlett with conspiracy to commit the capital murder of Fay James. Miss. Code Ann. §§ 97-1-1(a) and 97-3-19(2)(d) (Supp. 1985).
On May 26, 1983, the case was called for trial in the Circuit Court sitting in Charleston, Mississippi. Three days later the jury found both James and Bramlett guilty as charged. Following the filing and denial of the usual post-trial motions, the Circuit Court on June 30, 1983, sentenced James to the custody of the Mississippi Department of Corrections for twenty (20) years and to pay a fine of $10.000. Miss. Code Ann. § 97-1-1 (Supp. 1985). On the same day, the Circuit Court sentenced Bramlett to the custody of the Mississippi Department of *808 Corrections for twenty (20) years. These consolidated appeals have followed.

III.
James and Bramlett each challenge the sufficiency of the evidence to support their respective convictions of the crime of conspiracy to commit capital murder. The point was preserved below in that each, at the conclusion of all of the evidence, requested a peremptory instruction directing the jury to return a verdict of acquittal, which instructions were denied. Following the jury's verdict, each moved that the court enter judgment of acquittal notwithstanding the verdict of the jury, which motions were likewise denied.
The State has proceeded against James and Bramlett under our conspiracy statute, Miss. Code Ann. § 97-1-1(a) (Supp. 1985) which, in pertinent part, reads as follows:
If two (2) or more persons conspire ... to commit a crime ...; such persons, and each of them, shall be guilty of a felony ... [and] where the crime conspired to be committed is capital murder or murder as defined by law ..., the offense shall be punishable by a fine of not more than Five Hundred Thousand Dollars ($500,000) or by imprisonment for not more than twenty (20) years, or both.
The crime James and Bramlett are said to have conspired to commit is capital murder. For present purposes, capital murder has been defined in our law, Miss. Code Ann. § 97-3-19(2)(d) (Supp. 1985) as:
The killing of a human being without the authority of law by any means or in any manner ... [when the] .. . murder ... is perpetrated by any person who has been offered or has received anything of value for committing the murder, ... [in which event] all parties to such a murder are guilty as principals.
The statutorily defined crime of conspiracy to commit a crime requires without doubt the participation of two or more individuals. In Moore v. State, 290 So.2d 603 (Miss. 1974) we stated:
Since a conspiracy to commit a crime is different from the crime that is the object of the conspiracy, the first necessarily involves joint action while the other does not. By its very nature conspiracy is a joint or group offense requiring a concert of free will. The union of the minds of at least two persons is a prerequisite to the commission of the offense, or, stated differently, at least two persons must agree for a conspiracy to exist. 290 So.2d at 604. See also Griffin v. State, 480 So.2d 1124, 1126 (Miss. 1985); Norman v. State, 381 So.2d 1024, 1028 (Miss. 1980).
One who "conspires" with himself or with another who by law is precluded from co-conspirator status is not guilty of the crime of conspiracy in this state.[1]
*809 The crime of conspiracy has been further explained in our recent decision in McDonald v. State, 454 So.2d 488 (Miss. 1984):
To constitute an individual a co-conspirator, there must a be recognition on his part that he is entering into some kind of common plan, and knowingly intends to further its common purpose. McDonald, 454 So.2d at 494. See also, Griffin v. State, 480 So.2d 1124, 1126 (Miss. 1985).
McDonald cites federal case law in further explaining the concepts of criminal conspiracy incorporated in Mississippi law. "A co-conspirator's liability is limited to the common purpose while he remains in it." United States v. Peoni, 100 F.2d 401, 403 (2d Cir.1938). "He must in some sense promote their venture himself." United States v. Falcone, 109 F.2d 579, 581 (2d Cir.1940). "[A] person may be held as a conspirator regardless of the point in time in which he enters it, so long as he enters it with intent to further its objects during the life of the conspiracy." Lile v. United States, 264 F.2d 278, 279 (9th Cir.1958). From these cases a co-conspirator to commit murder does not have to intend to pull the trigger himself, the fact that he "knowingly intends to further the common purpose" of the conspiracy is enough to qualify him as a member of the conspiracy.
Of relevance to the participation of Bramlett is the rule that a conspirator may not effectively withdraw except by unequivocal affirmative conduct. The burden of proving the fact of withdrawal rests upon the party asserting it. Norman v. State, 381 So.2d 1024, 1029 (Miss. 1980).
The crux of this assignment of error from the point of view of both James and Bramlett is the same: Each contends that, as a matter of law, Griffin could not occupy the role of co-conspirator, and that, as a matter of undisputed fact, Bramlett did not occupy the role of co-conspirator. Hence, whatever other crimes in law or in morals James and Bramlett may have been guilty of, they are not guilty of the crime of conspiracy.
To be sure, Griffin was not eligible for co-conspirator status. He testified that he was a paid police informer and that he never intended to carry out the murder of Fay James. In Moore v. State, 290 So.2d 603 (Miss. 1974), we held:
That where one of two persons who conspire to do an illegal act is ... an informer for the state who entered into the conspiracy for the purpose of informing on the other party, such other person cannot be convicted of conspiracy. After the elimination of ... an informer who conspires solely for the purpose of informing, there must remain at least two *810 persons to a conspiracy. 290 So.2d at 605.
Under the facts of this case, the conspiracy in law must have been between James and Bramlett, or not at all.
In the present assignment of error both James and Bramlett test the legal sufficiency of the evidence supporting the verdict of the jury on each element of the offense of conspiracy to commit capital murder. Where such a point is presented on appeal, we must, with respect to each element of the offense, consider all of the evidence  not just the evidence which supports the State's case  in the light most favorable to the State. Williams v. State, 463 So.2d 1064, 1067 (Miss. 1985); May v. State, 460 So.2d 778, 781 (Miss. 1984); Callahan v. State, 419 So.2d 165, 174 (Miss. 1982); Sadler v. State, 407 So.2d 95, 97 (Miss. 1981). The credible evidence which is consistent with the verdict must be accepted as true. Spikes v. State, 302 So.2d 250, 251 (Miss. 1974). We may reverse only where, with respect to one or more elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty. Cook v. State, 467 So.2d 203, 208-09 (Miss. 1985); Bullock v. State, 447 So.2d 1284, 1286-87 (Miss. 1984); Dickerson v. State, 441 So.2d 536, 538-40 (Miss. 1983). Matters regarding the weight and credibility to be accorded evidence are to be resolved by the jury. Neal v. State, 451 So.2d 743, 758 (Miss. 1984). Gathright v. State, 380 So.2d 1276, 1278 (Miss. 1980).
When these standards are applied to the evidence before the Court, we can only hold that the trial court correctly denied both James' and Bramlett's request that the jury be instructed peremptorily to return a not guilty verdict as well as the separate motion of each for judgment of acquittal notwithstanding the verdict.
Both James and Bramlett argue that Bramlett was not a conspirator in that he only agreed to find someone who would carry out the contract killing of Fay James. There is no evidence, we are told, that Bramlett ever entered into any agreement with James to commit the murder. It is suggested that the $1,000 Bramlett received from James was a mere "finder's fee". Appellants' understanding of the concept of criminal conspiracy is far more narrow than our law directs.
Our review of the record convinces us that Bramlett knew that the object of the Saturday meeting in December of 1981, was to plan the details of the murder of Fay James. Bramlett procured Griffin's attendance in furtherance of that purpose. He accepted $1,000 for his services. Testimony reveals that, between that Saturday and December 31, 1981, Bramlett spoke with Griffin six to eight times concerning the details of this contract murder. At one point Bramlett said to Griffin, "If you don't do it, I'll have to do it myself."
This evidence is legally sufficient to establish that Bramlett knowingly entered into a common plan with James and procured the participation of Griffin to further the purpose of that plan. It is not required before one may be guilty of conspiracy that he either initiate the plan or have intended to pull the trigger himself. So long as the accused has knowingly undertaken to play a part in a common plan the object of which is unlawful under Section 97-1-1, he is guilty of conspiracy. On facts such as these, a middle man such as Bramlett easily fits within the concept of one who knowingly intends to further a common purpose and thus qualifies as a co-conspirator.
Beyond this the evidence is by no means conclusive that Bramlett withdrew from the conspiracy. Having been a part of the common plan and having for valuable considerations taken actions in furtherance of that plan, Bramlett could only withdraw by unequivocal affirmative conduct, a matter with respect to which he bore the burden of proof. Norman v. State, 381 So.2d 1024, 1029 (Miss. 1980). The focus we emphasize is upon Bramlett's conduct and his intent. That James may have regarded Bramlett as out of the plan is irrelevant if this was not the result of an affirmative act of withdrawal on Bramlett's *811 part. In sum, a reasonable jury could well have concluded from the evidence that Bramlett had not effectively withdrawn from the conspiracy. These assignments of error are denied.

IV.
James and Bramlett next assert that the trial court committed error when it granted over their objection Instruction S-2 which reads as follows:
The Court instructs the Jury that in establishing a conspiracy, the State is never required to prove in express terms an agreement between the parties to commit the crime, but it is sufficient when the evidence reveals, beyond a reasonable doubt, from all the facts and circumstances, together with the acts of the parties to commit the crime, and you are further charged that you have the right, under the law, to consider all the testimony in this case which tends, either directly or indirectly to prove or disprove the theory of the State that a conspiracy to kill and murder Fay James was concocted or had by and between the Defendants, Billy Newton James and Calvin Kenneth Bramlett, and an unindicated co-conspirator, William Michael Griffin, Sr., or any one or all of them. [Emphasis supplied].
The vice in the instruction is said to be that it would allow the jury to convict either James or Bramlett upon a finding that James or Bramlett conspired only with Griffin, but not necessarily with each other. As indicated above, Griffin, as an informant working with law enforcement, is precluded from co-conspirator status. Moore v. State, 290 So.2d 603, 605 (Miss. 1974). A valid conviction of either James or Bramlett may only be had where the jury has found that each conspired with the other. An instruction which allows the jury to convict upon finding that either conspired only with Griffin is erroneous.
At the same time James complains of the denial of his requested Instruction No. DJ-3A which would have informed the jury of Griffin's ineligibility for co-conspirator status if the jury found him to be an informant.
DJ-3A
As I have previously instructed you, the essential element of the offense of conspiracy to commit a crime is the express, or, implied agreement, voluntarily made, between two or more persons to commit that crime. One person acting alone without the actual agreement of another person, no matter how sincere he may be in his desire to commit a crime, cannot be guilty of a conspiracy to commit a crime.
In line with this law, you are advised that:
(1) if one person only feigns acquiesence in a proposal of another to commit a crime, there is no conspiracy between that person and the other since there is no union or concert of wills of two or more persons to commit a crime; or
(2) if one of two persons who conspire to commit a crime is acting as an informer and entered into the conspiracy for the purpose of informing on the other, then in either event, the other person cannot be guilty of the crime of conspiracy.
Applying these rules of law to this case, you are instructed that unless the State of Mississippi has proved beyond a reasonable doubt that William Griffin at the time he entered into the alleged conspiracy intended to commit the crime and was not simply feigning acquiesence in a proposal of Billy James, if any, to commit the crime and that at the time any agreement was entered into between Griffin and Billy James, Griffin, acting as an informer, entered into the conspiracy for the purpose of informing on Billy James, then you cannot find Billy James guilty of having conspired with William Griffin to commit a crime.
Requested Jury Instruction No. DJ-3A would have gone a long way toward counteracting the erroneous impression created by No. S-2. Unfortunately No. DJ-3A was not submitted to the jury. We are of the opinion that Instruction No. S-2 erroneously *812 advised the jury of what must be found before a verdict of guilty could be returned. The core of the problem is the last portion of Instruction No. S-2 which advised the jury that "the theory of the state" was that a conspiracy to kill and murder Fay James was made and entered into
by and between the Defendants, Billy Newton James and Calvin Kenneth Bramlett, and an unindicted co-conspirator, William Michael Griffin, Sr., or any one or all of them. [emphasis supplied]
Emphatically, our law does not allow the jury to convict upon the finding of a conspiracy of "any one ... of them".
We recognize that Instruction No. S-1 did instruct the jury that, in order to convict, it would have to find a three person conspiracy  James, Bramlett and Griffin. Instruction No. S-1 does not contain the vice of No. S-2 in that Instruction No. S-1, if followed carefully by the jury, would not allow the return of a verdict of guilty without a determination by the jury that James and Bramlett conspired with each other.[2] We are mindful of the rule that jury instructions are to be read as a whole and that no one instruction is to be taken out of context of the whole. Jackson v. Griffin, 390 So.2d 287, 290 (Miss. 1980). On the other hand, where a central instruction in a criminal case has been confusingly worded to the point where the jury might fairly read the instruction as authorizing conviction on the basis of evidence insufficient in law to sustain a conviction, and where, further, the defendant requested a clarifying instruction correctly worded yet nevertheless refused by the trial judge, we will reverse. See Byrd v. F-S Prestress, Inc., 464 So.2d 63, 66 (Miss. 1985). Because the trial judge granted State's requested Instruction No. S-2 and because the trial judge refused defense Instruction No. DJ-3A, we reverse the judgment of conviction entered in the Circuit Court of Tallahatchie County, Mississippi of James and Bramlett are guilty of the crime of conspiracy to commit capital murder and remand for a new trial.
In view of the disposition made of these assignments of error, we have not found it necessary to consider or address any of the other assignments of error tendered by either party.
REVERSED AND REMANDED FOR A NEW TRIAL.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] We are not unaware of the fact that new insights into the nature of criminal conspiracy are producing a fundamental change in the content of our nations' laws on the subject. Under what has come to be known as the unilateral approach to conspiracy, the culpability focus is solely upon the individual charged. That the "co-conspirator" may have been a confidential informant or otherwise ineligible for co-conspirator status is logically irrelevant to the question whether the accused has with the requisite intent engaged in the sort of anti-social conduct we label and condemn as conspiracy. In their explanation of the unilateral approach, the drafters of the Model Penal Code commented:

Unilateral Approach Of The Draft.
The definition of the draft parts from the traditional view of conspiracy as an entirely bilateral or multilateral relationship, the view inherent in the standard formulation cast in terms of `two or more persons' agreeing or combining to commit a crime. Attention is directed instead to each individual's culpability by framing the definition in terms of the conduct which suffices to establish liability of any given actor, rather than a conduct of a group of which he is charged to be a part  an approach which in this comment we have designated `unilateral'.
One consequence of this approach is to make it immaterial to the guilt of a conspirator whose culpability has been established that the person or all of the persons with whom he conspired have not been or cannot be convicted. Present law frequently holds otherwise, reasoning from the definition of conspiracy as an agreement between two or more persons that there must be at least two guilty conspirators or none. The problem arises in the number of contexts, ... [one of which is] where the person with whom the defendant conspired secretly intends not to go through with the plan.
Second: Where the person with whom the defendant conspired secretly intends not to go through with the plan. In these cases it is generally held that neither party can be convicted because there was no `agreement' between two persons. Under the unilateral approach of the draft, the culpable party's guilt would not be affected by the fact that the other party's agreement was feigned. He had conspired, within the meaning of the definition, in the belief that the other party was with him; apart from the issue of entrapment often presented in such cases, his culpability is not decreased by the other's secret intention. True enough, the project's chance of success had not been increased by the agreement; indeed, its doom may have been sealed by this turn of events. But the major basis of conspiratorial liability, the unequivocal evidence of a firm purpose to commit a crime  remains the same.
M.P.C. § 5.03 [Tent.Draft No. 10,] Comments at pp. 104-105. This "unilateral" concept has been adopted, in whole or in part, in at least twenty-six states and is under consideration in most of the remaining states. See Note, Conspiracy: Statutory Reforms Since The Model Penal Code, 75 Col.L.R. 1122, 1125 (1975); but see, Developments In The Law  Criminal Conspiracy, 72 Harv.L.Rev. 920, 926-27, 940 (1959).
Notwithstanding these developments in the law of conspiracy elsewhere, we are committed firmly to the premise that it is the legislature which possesses sole authority to create and define crimes. Winters v. State, 473 So.2d 452, 456 (Miss. 1984); McBrayer v. State, 467 So.2d 647, 648 (Miss. 1985); Howell v. State, 300 So.2d 774, 780-81 (Miss. 1974). The legislature of this state has defined conspiracy so that it contemplates and requires two conspirators before one may be found guilty. Miss. Code Ann. § 97-1-1 (Supp. 1985). Here, as elsewhere, we enforce the legislative directive.
[2] In truth and in fact, Instruction No. S-1 goes too far in the other direction. It told the jury it could only convict if it found that James, Bramlett and Griffin conspire each with the other. As noted above, only a conspiracy between James and Bramlett need have been found.