In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 11-3888, 12-1048, 12-1267, 12-1538 & 12-2665

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOE LONG, DANIEL COPRICH,
GLENN ISLAND, AHMAD WILLIAMS,
and ISAIAH HICKS,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 CR 401 — **James B. Zagel**, *Judge.*

ARGUED SEPTEMBER 17, 2013 — DECIDED APRIL 1, 2014

Before WILLIAMS, SYKES, and TINDER, *Circuit Judges.*

SYKES, *Circuit Judge.* The five defendants in this appeal were part of a conspiracy to distribute cocaine on the South Side of Chicago. Ahmad Williams pleaded guilty, but the other four—Joe Long, Daniel Coprich, Glenn Island, and Isaiah

Hicks—went to trial and were convicted by a jury. On appeal each defendant raises a number of different challenges to his conviction and sentence. Only one has merit: Island must be resentenced under the Fair Sentencing Act, which after *Dorsey v. United States*, 132 S. Ct. 2321 (2012), applies to defendants sentenced after the Act was passed. We affirm in all other respects.

## I. Background

Each defendant raises a different mix of challenges to his conviction and sentence, and none of the challenges are shared among all defendants. So we begin with a brief discussion of the facts common to all and elaborate on the details in our discussion of the issues raised by each individual defendant.

Isaiah Hicks led a large organization that distributed crack cocaine on the South Side of Chicago. He oversaw the acquisition, processing, and packaging of the drugs with help from Daniel Coprich, Ahmad Williams, and others. Once the processing was complete, Hicks sold the cocaine to distributors, including Joe Long and Glenn Island. On multiple occasions Hicks sold drugs to his distributors on credit.

As is common in many drug-trafficking prosecutions, much of the government's evidence at trial consisted of wiretapped phone conversations between various members of the conspiracy. The jury also heard testimony from participants in Hicks's organization, including Kevin Masuca, Hicks's former right-hand man, and Latasha Williams, Hicks's former girlfriend. Masuca described the defendants' involvement in the

conspiracy; for instance, he testified that on several occasions Williams helped process and package cocaine, and that Coprich helped Hicks acquire cocaine for processing. Less favorably to the prosecution, he testified that Long and Island were only customers of the conspiracy, not members of it. Finally, the government presented Masuca's handwritten ledger, which listed the organization's drug deals over a few months in early 2008.

The jury convicted all five defendants of conspiracy with intent to distribute over 50 grams of crack cocaine, among other offenses. The judge sentenced each according to two sentencing principles that have since been overruled: First, following this court's instructions in *United States v. Fisher*, 635 F.3d 336, 338 (7th Cir. 2011), the judge declined to apply the Fair Sentencing Act's higher quantity thresholds for mandatory minimum sentences; and second, following the Supreme Court's holding in *Harris v. United States*, 536 U.S. 545 (2002), he concluded that facts neither included in the indictment nor found by a jury could nonetheless trigger an increased mandatory minimum sentence. On appeal the defendants argue that the application of these now-overruled cases and a host of other errors at trial and at sentencing require vacating the sentences or reversing the convictions.

## II. Discussion

### A. Sufficiency of the Evidence

Long and Island argue that the evidence showed only that they were customers, not members, of Hicks's organization.

Because a mere buyer-seller relationship does not support an inference of conspiracy, they contend that the evidence was insufficient to allow a jury to convict them of conspiring with Hicks. In evaluating the sufficiency of the evidence, we "draw all reasonable inferences in the light most favorable to the prosecution" and reverse "only if no rational jury could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Johnson*, 592 F.3d 749, 754 (7th Cir. 2010).

To obtain a conspiracy conviction, the government must prove that the defendant knowingly and intentionally agreed with at least one other person to commit an unlawful act. *See id.* Although every drug deal involves an unlawful agreement to exchange drugs, we've held that a buyer-seller arrangement can't by itself be the basis of a conspiracy conviction because there is no common purpose: "[T]he buyer's purpose is to buy; the seller's purpose is to sell." *United States v. Mancillas*, 580 F.2d 1301, 1307 (7th Cir. 1978) (quoting *United States v. Ford*, 324 F.2d 950, 952 (7th Cir. 1963)). So there must be an agreement, in addition to the underlying purchase agreement, to commit a common crime; in cases like this, it's usually an agreement that the buyer will resell drugs to others. The government may use circumstantial evidence to prove a resale agreement, but it may not rely solely on purchases and sales, which after all are present in both buyer-seller and conspiracy arrangements. If the evidence is equally consistent with either a buyer-seller relationship or a conspiratorial relationship, the jury would be left with two equally plausible inferences and could not conclude beyond a reasonable doubt that there was a conspiracy. *See Johnson*, 592 F.3d at 755.

To decide whether circumstantial evidence was sufficient to support the jury's inference of conspiracy, "[w]e take into account all [of] the evidence surrounding the alleged conspiracy and make a holistic assessment of whether the jury reached a reasonable verdict." *United States v. Brown*, 726 F.3d 993, 1002 (7th Cir. 2013). Standing alone, neither large-quantity sales, *United States v. Colon*, 549 F.3d 565, 569 (7th Cir. 2008), nor sales on credit, *Johnson*, 592 F.3d at 755 n.5, can sufficiently distinguish a conspiracy from an ordinary buyer-seller relationship. But "when a credit sale is coupled with certain characteristics inherent in an ongoing wholesale buyer-seller relationship," the jury can infer that the seller only extended credit because the buyer agreed to pay the debt by reselling the drugs. *Id.* Both parties would share the common objective of reselling the drugs since resale is the means of closing out the credit transaction. *Cf. United States v. Moreland*, 703 F.3d 976, 987 (7th Cir. 2012) ("[T]he jury could find that he knew that his supplier would not sell him wholesale quantities of drugs on credit unless he agreed to resell them, and by thus agreeing with his supplier to commit a crime (the resale of the illegal drugs) he became a conspirator.").

Here there was evidence that both Long and Island made multiple purchases on credit in the context of an ongoing wholesale relationship. Masuca testified about at least two occasions in which he delivered 63 grams of crack cocaine to Long without receiving any money in return and a third occasion in which Hicks had Masuca deliver one-eighth of an ounce while allowing Long to pay later. Similarly, Masuca's ledger showed that on at least two separate occasions Island purchased 63 grams of crack on credit.

Other evidence supported the conspiracy inference as well. In one conversation with Masuca, for instance, Hicks explained that ordinary customers were not allowed to purchase at the same price offered to Island, implying that Island held a more important position in the conspiracy than a normal customer. Long and Hicks discussed plans for expanding their business; in one phone call Long told Hicks, "we all gonna make this s**t together," to which Hicks replied, "I'm feelin' it … . That's what we're gonna do … ." These conversations strongly suggest that Long and Island were Hicks's business partners, not customers, reinforcing our conclusion that the evidence was sufficient under the totality of the circumstances. *See Brown*, 726 F.3d at 1006.

It's true that Masuca testified on cross-examination that Long and Island were only Hicks's customers, not members of the organization. But Long and Island didn't have to be members of Hicks's gang to be guilty of conspiring with Hicks; the legal definition of a conspirator is not the same as the street definition. Legally, Long and Island were guilty of conspiracy if they knowingly agreed with Hicks to distribute drugs— regardless of whether Hicks or anyone else ever considered them *real* members of the organization. There was sufficient evidence to support the jury's conclusion that Long and Island agreed to resell drugs, and Masuca's testimony was not inconsistent with that finding.

### B. Motion for Mistrial

Long also argues that the district court should have granted a mistrial after the government played a recorded conversation

in which Long discussed a murder with Hicks. The jury heard Long say, "n***a supposed to have killed the m***r on 64th and Aberdeen." The government intended to redact this portion of the call (apparently considering it irrelevant) but failed to stop the tape in time. The transcripts provided to jurors did not include this segment of the conversation, but they did include Long's subsequent statement that he would "do any m***in' thing I need to make money."

Long moved for a mistrial immediately after the tape was played, arguing that the jury could not fairly decide the case knowing that Long was somehow connected to a murder, and that the transcript only exacerbated the problem by suggesting that Long would do literally anything, even murder, for money. The judge denied the motion. He noted first that the unredacted snippet did not actually connect Long to the murder; in fact, it was impossible to understand who was involved in the murder at all. The judge went on to explain that the government would be presenting "[l]ots of tapes, lots of discussions," and that the brief snippet would probably not stand out in jurors' minds. The judge also noted that a limiting instruction would be pointless since it would only highlight the otherwise isolated statement. Long does not argue on appeal that any curative instruction was required; instead he contends that once the tape was played, the judge was required to grant a mistrial.

We have held that "a mistrial is appropriate when an event during trial has a real likelihood of preventing a jury from evaluating the evidence fairly and accurately, so that the defendant has been deprived of a fair trial." *United States v.*

*Collins*, 604 F.3d 481, 489 (7th Cir. 2010). But trial judges have broad discretion when ruling on a motion for mistrial because they are "in the best position to determine the seriousness of the incident in question, particularly as it relates to what has transpired in the course of the trial." *United States v. Clarke*, 227 F.3d 874, 881 (7th Cir. 2000). Thus, we review the denial of a motion for mistrial only for abuse of discretion, and we will not reverse absent "a strong conviction that the district court erred." *Id.*

Relying in part on *United States v. Mannie*, 509 F.3d 851 (7th Cir. 2007), Long argues that the recording was so inherently prejudicial that failing to grant a mistrial was an abuse of discretion. In *Mannie* the defendant's trial was rendered unfair by the outrageous conduct of his codefendant—who threw his attorneys to the ground and threatened the judge, all in front of the jury—and by gangsters in the courtroom who tried to intimidate jurors. *See id.* at 853–56. In light of the government's theory that the defendants were "dangerous members of a street gang," we concluded that these antics and occurrences created "an impermissible risk that some jurors voted to convict based on the perception that Mannie was a violent gangster who needed to be incarcerated for the safety of the community." *Id.* at 857. Though we held that the district court abused its discretion by not granting a mistrial, we emphasized that "this set of circumstances is truly rare." *Id.*

Long's trial was not characterized by the sort of chaos at issue in *Mannie*. The jury heard Long make a fleeting reference to a murder that was unconnected to the case; the statement was introduced inadvertently and never discussed again over

the course of a lengthy trial. Moreover, there was no indication that Long was involved in the killing, whereas the jury heard dozens of phone calls in which Long explicitly implicated himself in high-stakes drug deals. Since all of Long's offenses involved dealing drugs, the judge reasonably concluded that these calls—rather than a single unexplained statement about murder—would dominate the jury's deliberations.

The trial judge was in the best position to assess the effect that this "inadvertent, isolated and ambiguous" statement had on the jury. *United States v. Curry*, 538 F.3d 718, 728 (7th Cir. 2008). The judge concluded that it would not prevent jurors from fairly weighing the evidence, and we cannot say that this was an abuse of discretion.

### C. Sentencing Issues

All defendants argue that the judge improperly determined the applicable mandatory minimum sentence, violating the Fair Sentencing Act, the Fifth Amendment, the Sixth Amendment, or some combination of all three. Island properly raised a meritorious challenge on these grounds below, so we will vacate his sentence and remand for resentencing. The other defendants' objections either lack merit or were never raised below. We begin by discussing the principles that apply to all defendants and then consider each defendant's particular circumstances in more detail.

Mandatory minimums for drug felonies are based on quantity and recidivism. Under the Fair Sentencing Act of 2010 ("FSA"), drug felonies involving over 28 grams of crack

cocaine carry a mandatory minimum sentence of five years, which increases to ten years if the government shows by information that the defendant has previously been convicted of a drug felony. *See* 21 U.S.C. §§ 841(b)(1)(B), 851(a). Felonies involving over 280 grams carry a minimum of ten years, increasing to twenty if the government shows a prior drug-felony conviction. *See id.* § 841(b)(1)(A)(iii). Before the FSA the quantity thresholds were lower: 5 grams triggered the five- and ten-year minimums, and 50 grams triggered the ten- and twenty-year minimums.

When the defendants were sentenced, the law of this circuit required district courts to apply the lower, pre-FSA thresholds to any defendant who was convicted for conduct occurring before the FSA was passed. *See United States v. Fisher*, 635 F.3d 336, 340 (7th Cir. 2011). The defendants distributed cocaine before the FSA was enacted, so in accordance with *Fisher*, the district court denied their request for application of the higher, post-FSA thresholds. But the Supreme Court has since over-turned *Fisher* and held that the FSA applies to any defendant *sentenced* after the Act was enacted, regardless of when the underlying conduct occurred. *See Dorsey v. United States*, 132 S. Ct. 2321, 2326 (2012). Since all defendants were sentenced after the FSA was enacted, *Dorsey* requires us to vacate and remand for resentencing unless the failure to apply the FSA was harmless.

Long, Coprich, Williams, and Hicks also argued below that their prior drug-felony convictions should not increase the mandatory minimum because the government never proved the fact of those convictions to the jury; instead the

government demonstrated the prior convictions by filing an information with the judge. *See* 21 U.S.C. § 851 (describing procedure for proving prior convictions by information). The district court found this argument foreclosed by *Harris v. United States*, 536 U.S. 545, 568–69 (2002), which held that facts triggering a mandatory minimum could be found by the judge rather than the jury. That case too has been overruled, and under *Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013), nearly all facts supporting a mandatory minimum are now treated as elements of an offense that must be charged in an indictment and found by the jury beyond a reasonable doubt.

*Alleyne* would support the defendants' position but for a footnote in the opinion identifying "a narrow exception … for the fact of a prior conviction," which need not be proved to the jury. *Id.* at 2160 n.1. The exception comes from *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), which has not been overruled. The defendants argue that recent cases have undermined the exception, but even if *Almendarez-Torres* seems inconsistent with the Supreme Court's recent sentencing jurisprudence, we are bound by its holding. *See United States v. Browning*, 436 F.3d 780, 782 (7th Cir. 2006) ("[W]e are not authorized to disregard the Court's decisions even when it is apparent that they are doomed."); *United States v. Harris*, 741 F.3d 1245, 1250 (11th Cir. 2014) ("[W]e are not free to do what the Supreme Court declined to do in *Alleyne*, which is overrule *Almendarez-Torres*."). Therefore, the enhanced mandatory minimum was properly applied even though the fact of the prior convictions was never submitted to the jury.

Long, Coprich, and Williams also filed a supplemental brief arguing that the drug quantity should have been decided by the jury rather than the judge. That's true: After *Alleyne* drug quantities can only trigger a mandatory minimum if found by a jury beyond a reasonable doubt. *See United States v. Claybrooks*, 729 F.3d 699, 708 (7th Cir. 2013). But the defendants never properly raised this objection at trial, so we must review the challenge under the plain-error standard, *see United States v. Kirklin*, 727 F.3d 711, 717 & n.2 (7th Cir. 2013), which means we can only reverse if the error was plain, affected the defendants' substantial rights, and "seriously affected the 'fairness, integrity, or public reputation of [the] judicial proceedings,'" *id.* at 718 (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). We will not reverse under this standard if we are "convinced that upon a properly worded indictment, a properly instructed jury would have found the defendants guilty of distributing the requisite threshold quantities of narcotics." *Id.* at 719 (quoting *United States v. Mansoori*, 304 F.3d 635, 658 (7th Cir. 2002)). Long, Coprich, and Williams can't demonstrate plain error here because over-whelming evidence shows that they would have received the same sentences even absent the errors.

### 1. *Long's Sentence*

The district court found Long responsible for between 129.5 and 192 grams of crack cocaine and sentenced him at the pre-FSA mandatory minimum of ten years. Long argued that the FSA should apply and, after losing that point, asked the judge to state whether he would impose a different sentence if

the FSA had applied. The judge imposed the sentence without making any such statement, leading the government to ask directly whether the judge felt "constrained" by the mandatory minimum. The judge replied, "I do not feel constrained. This is the sentence I would have given under any circumstances."

Long now argues that his sentence must be vacated in light of *Dorsey* because the judge failed to apply the FSA and under *Alleyne* because the jury never found a fact necessary for triggering the mandatory minimum (namely, that Long was responsible for over 280 grams of crack cocaine). But the judge clearly explained that Long would have received the same sentence with or without the mandatory minimum, so any error in applying the mandatory minimum was harmless. *See United States v. Foster*, 701 F.3d 1142, 1157–58 (7th Cir. 2012) ("[T]he district court's statement that it would have imposed the same sentence regardless of the FSA's application in this case indicates that the error was harmless."). Even *Alleyne*, which held that a sentence imposed under an erroneously calculated sentencing range must be reversed even if the defendant *could have* received the same sentence under the correctly computed range, *see* 133 S. Ct. at 2162, never suggested that reversal was appropriate if the defendant *would have* received the same sentence under either calculation. After all, the Court held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury," *id.* at 2155, and the failure to submit an element of the offense to the jury is reviewed for harmless error, *see Neder v. United States*, 527 U.S. 1, 4 (1999). Since the error here was clearly harmless—the judge specifically said he would impose the

same sentence even if a lower mandatory minimum applied—Long's challenge must fail.

### 2. *Coprich's Sentence*

Coprich received the mandatory minimum sentence of 240 months after the judge found him responsible for over 1.6 kilograms of crack cocaine. Although the guidelines recommended a sentence of 360 months to life, the judge decided to sentence below the range and explained: "I am, by law, required to give you a certain sentence. Below that sentence, I can't really go." Coprich now argues that his sentence violates *Dorsey* and *Alleyne* because the jury didn't find him responsible for the 280 grams of crack cocaine needed to support the 240-month mandatory minimum under the FSA. Coprich never made this argument below, so we review for plain error. Under the plain-error standard, we can't reverse if we are "convinced that upon a properly worded indictment, a properly instructed jury would have found the defendants guilty of distributing the requisite threshold quantities of narcotics." *Kirklin*, 727 F.3d at 719 (quoting *Mansoori*, 304 F.3d at 658).

Overwhelming evidence showed that Coprich was responsible for distributing far more than 280 grams of crack. Masuca testified that he delivered 63 grams to Coprich four or five times every week; even two weeks at that pace would put Coprich over the threshold. Masuca's testimony was corroborated by his ledger, which showed that Masuca gave Coprich at least 63 grams of crack on over 20 occasions, and by wiretaps, which captured three of those transactions. Moreover,

Masuca's testimony and some recorded phone calls indicated that Coprich helped Hicks obtain kilograms of powder cocaine to be processed into crack for distribution. We find it highly unlikely that a jury would have convicted Coprich for his role in the conspiracy without also finding him responsible for at least 280 grams of crack, so we will not reverse on plain-error review. *See id.*

### 3. *Williams's Sentence*

Williams pleaded guilty to conspiracy to distribute over 50 grams of crack. At sentencing the government argued that Williams was responsible for over 44 *kilograms*, holding him accountable for all the foreseeable dealing of his coconspirators in furtherance of the conspiracy. *See* U.S.S.G. § 1B1.3(a)(1)(B). Williams countered that he was merely a distributor for Hicks with no part in the broader organization—in other words, he was just a "spoke" in Hicks's "hub-and-spokes conspiracy"—and therefore, he should not be held responsible for the activities of the entire organization. The judge agreed with the government, finding that Williams was "a committed member" of Hicks's organization, and gave Williams the mandatory minimum of 120 months. The judge noted that "if it weren't for the mandatory minimum, I might give you a sentence that was a little lower, but it wouldn't be much lower." Williams now argues that the mandatory minimum should not have applied because he never admitted responsibility for over 280 grams, and since he pleaded guilty, no jury ever found him responsible for that quantity either. He did not raise this argument below, so our review is for plain error.

We have already explained that an *Alleyne* challenge will fail on plain-error review if the record leaves us "convinced that … a properly instructed jury would have found the defendants guilty of distributing the requisite threshold quantities of narcotics." *Kirklin*, 727 F.3d at 719 (quoting *Mansoori*, 304 F.3d at 658). Williams never actually faced a jury (he pleaded guilty), but the question remains the same: Had Williams requested a jury finding on drug quantity, would the jury have found the threshold amount beyond a reasonable doubt? *See United States v. Hunt*, 656 F.3d 906, 913 (9th Cir. 2011). If we are convinced that the answer is "yes," then reversal is inappropriate on plain-error review; otherwise defendants would have an incentive not to raise this objection in time to correct the problem by requesting a jury.

The record here leaves us convinced that a properly instructed jury would have found Williams responsible for the full amount sold by Hicks's organization because he was a committed member of the conspiracy who supported its operations as a whole. For example, the government presented testimony, confirmed by wiretaps, demonstrating that Williams warned Hicks about an imminent search of Masuca's house, giving the gang time to remove the weapons and drugs stashed there before police arrived. Warning an organization about police activity is usually evidence of conspiracy, *see United States v. Bustamante*, 493 F.3d 879, 886 (7th Cir. 2007), at least when the warning furthers the organization's interests and not just the defendant's personal interest in a particular sale, *cf. Johnson*, 592 F.3d at 757 ("Johnson warned Venson [of police in the area] because *he was waiting for Venson to deliver the drugs he had just ordered*. … This is not conspiratorial behavior;

it is self-preservation." (emphasis added)). Williams does not suggest that he was worried about being *personally* exposed during the raid on Masuca's house; rather, he was trying to protect *the organization* in which he played a profitable role.

Other evidence confirms that Williams was a key member of Hicks's organization. Latasha Williams and Masuca corroborated each other's account of Williams's participation in cooking, packaging, and transporting crack cocaine with other members of the conspiracy. Wiretaps reveal that Williams sometimes received crack on credit. Masuca even testified that the organization paid Williams a salary and supplied him with a gun. Given all this evidence, there is no real possibility that a jury would have found Williams responsible for less than 280 grams of crack cocaine. Since Williams would have received the same minimum sentence even if the question had been sent to a jury, we can't say that the failure to do so affected Williams's substantial rights or impugned the fairness, integrity, or reputation of the proceedings, and thus his challenge must fail.

### 4. *Island's Sentence*

Island received the pre-FSA mandatory minimum of 240 months after the judge found him accountable for 259 grams of crack cocaine and determined that he had previously been convicted of a drug felony. Under the FSA these findings wouldn't have been enough: The 240-month mandatory minimum would apply only if Island were responsible for over 280 grams of crack cocaine. *See* 21 U.S.C. § 841(1)(A)(iii). Island argued at his sentencing hearing that the

FSA should apply, a position later vindicated by the Supreme Court in *Dorsey*. *See* 132 S. Ct. at 2326. The government concedes that because Island preserved his challenge on this point, he is entitled to resentencing in accordance with the FSA.

### 5. *Hicks's Sentence*

Hicks argues that his sentence of 30 years was substantively unreasonable. He acknowledges that his sentence is below the properly calculated guidelines recommendation of life imprisonment. He nonetheless argues that his below-guidelines sentence was not low enough because the judge failed to properly consider the nature of his crimes, his horrible childhood history, and his mental-health problems as required by 18 U.S.C. § 3553(a). In particular, he notes that his crimes were mostly nonviolent, that his childhood was characterized by neglect and abuse (including a shocking incident in which his mother stabbed him in the eye, leaving him partially blind), and that he currently suffers from depression.

A sentence within or below the guidelines range is presumed reasonable, and we review the application of § 3553(a) only for abuse of discretion. *See United States v. Boroczk*, 705 F.3d 616, 623 (7th Cir. 2013). The district judge considered all the arguments Hicks raises on appeal and was moved by the arguments in mitigation to impose a below-guidelines sentence. Hicks cites no legal principle to support his assertion that the 30-year sentence was an abuse of discretion while a 25-year (or some other) sentence would have been appropriate. Instead, he simply points to the more mitigating aspects of his background and circumstances and insists that a lower

sentence is necessary—arguments that "would be better suited for a sentencing hearing before a district court," *United States v. Statham*, 581 F.3d 548, 550 (7th Cir. 2009). We find no abuse of discretion.

### III. Conclusion

For the foregoing reasons, we VACATE Island's sentence and REMAND for resentencing in light of *Dorsey* and the Fair Sentencing Act. In all other respects, the defendants' convictions and sentences are AFFIRMED.